UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BURNETT,

                Plaintiff,        Civil Action No. 18-11063

v.                                  Honorable Bernard A. Friedman
                                       Magistrate Judge David R. Grand

ANTHONY WALSH, *et al.*,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS WALSH AND HOLCOMB'S MOTION FOR PARTIAL SUMMARY JUDGMENT [31]

Plaintiff Michael Burnett #200640 ("Burnett"), who is incarcerated at Bellamy Creek Correctional Facility, appears *pro se* in this matter, which he commenced on April 2, 2018. In his amended complaint, Burnett alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. §1983 against numerous defendants whom he alleges physically attacked him "everyday" over a period of almost two years by forcing him "to ingest human waste." (**ECF No. 33.**) On March 30, 2020, Michigan Department of Corrections ("MDOC") Defendants Anthony Walsh and Dale Holcomb[1] filed a Motion for Partial Summary Judgment alleging that Burnett failed to exhaust his administrative remedies against them. (**ECF. No. 31.**) Burnett responded to the motion, (**ECF No. 34**), and Defendants filed a single reply brief. (**ECF No. 37.**)

---

[1] The motion indicates that it was also filed on behalf of MDOC Defendants Lawrence McKinney, Susan George, Kristy Eelbode and Jane Does 1-3, but those particular Defendants do not actually seek any relief with respect to Burnett's claims against them.

For the reasons set forth below, **IT IS RECOMMENDED** that the motion for partial summary judgment filed by Defendants Walsh and Holcomb (**ECF No. 31**) be **DENIED**.

## I.   BACKGROUND

Burnett, who was diagnosed with paranoid schizophrenia in 2008, was incarcerated at Macomb Correctional Facility ("MCF") during the alleged events. (**ECF No. 33, PageID.258**.) Defendants Walsh and Holcomb were employed as captains at MCF during the alleged events. (*Id.,* **PageID.258-59.**) Burnett claims that "everyday" he was forced to ingest human waste, and that these events were "a continuation from [Burnett's time at] Muskegon Correctional Facility," though what he seems to mean is that the same type of abuse took place while he was housed at that facility before being transferred to MCF. (*Id.,* **PageID.259.**)

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### III.   ANALYSIS

In their motion, Defendants argue that summary judgment is warranted on Burnett's claims against Walsh and Holcomb because Burnett failed to property exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a) (**ECF No. 31.**)  Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added).  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See Jones v.*

*Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

MDOC Policy Directive 03.02.130 governs "Prisoner/Parolee Grievances," and specifies the procedural and substantive requirements an inmate must satisfy to properly exhaust a grievance. (**ECF No. 31, PageID. 125-26**.) The Policy Directive provides, in pertinent part:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue appropriate staff.
>
> * * *
>
> R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; . . . The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

(*Id.*)

The Policy Directive goes on to describe the three-step grievance and appeals process, the details of which are not at issue here. However, relevant to the motion filed by Walsh and Holcomb, Paragraph G of the Policy Directive provides that an inmate's grievance may be rejected for a number of reasons, including if it "is vague, illegible, contains multiple unrelated

issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." (*Id.*, **PageID.349.**)

Defendants Walsh and Holcomb argue that Burnett failed to exhaust his administrative remedies against him because grievance MRF-17-09-1416-28a ("Grievance 1416"), which alleged facts against those two Defendants, was rejected as being a duplicate of MRF-17-09-1269-28a ("Grievance 1269") and that rejection was upheld at Step II and III of the MDOC's grievance process. (**ECF No. 31, PageID.127.**) This argument lacks merit.

First, this Court rejects the implication that "whenever a grievance is rejected as duplicative, it is not properly exhausted as a matter of law." *See Johannes v. Washington*, Case No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich., March 31, 2006). "If this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative. Thus, to carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the [] allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper." *See id*. The Defendants cannot meet that standard here. Indeed, the salient Grievances are not "duplicates" of one another.

*i. Grievance 1416*

In Grievance 1416, Burnett stated:

> On [September 13, 2017], custody staff physically assaulted me by putting feces and other bodily fluids in my mouth. This assault occurred in Unit 5 and cell 79.
>
> Captains Walsh, McKinney, and Holcomb acquiesced in their subordinates assaults by physically assaulting me themselves. These assaults occurred on the First, Second, and Third work shifts.

5

> I do not know the names of custody staff, and no one wants to provide me with their names. Instead, I am greeted with a code of silence. But I do know they are assigned to the safety system.
>
> Suggested Resolution: Stop the assaults. And provide me with custody staff names.

(**ECF No. 31-2, PageID.205.**)

At Step I, the MDOC rejected this grievance as being a "duplicate" of Grievance 1269. (**ECF No. 31-2, PageID.206.**) The Step II appeal was not responded to in a timely manner, so Burnett raised a Step III appeal. (**ECF No. 31-2, PageID.203.**) Like Step I, the MDOC rejected Grievance 1416 at Step III as violating PD 03.02.130, which states in relevant part, "a grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, raises issues that are *duplicative* of those raised in another grievance filed by the grievant or is filed in an untimely manner." (**ECF No. 31-1, PageID.140.**)

    *ii.*    *Grievance 1269*

In Grievance 1269, Burnett stated:

> (1) Custody staff (whose names are unknown) were assigned to the safety systems when they entered unit 5 and cell 79 and forcibly put feces in my mouth. I was attempting to sleep when the assault occurred. The incident occurred on the 6am-2pm work shift. (2) Custody staff (whose names are not known) were assigned to the safety systems when they entered the visiting room and forcibly put semen in my mouth. I was on a visit with my mother when this assault occurred. The incident occurred on the 2pm-10pm work shift. (3) Custody staff (whose name are not known) were assigned to the safety system when they entered unit 5 and cell 79 and forcibly put feces in my mouth. I was sleeping at the time this assault occurred. The incident occurred on the 10pm-6am shift. I have attempted to obtain custody staff names, but no one wants [sic] to provide their names to me. Custody staff are using the security procedures to gain access to unit 5 [sic] and cell 79 maliciously. The security procedures can not be obtained by me, because I am a prisoner.

(**ECF No. 31-2, PageID.210.**)

6

This grievance was denied at Step I for being a duplicate issue of grievance MRF-17-09-1320-26z ("Grievance 1320") (*Id.,* **PageID.211.**)  Burnett appealed.  (*Id.,* **PageID.208.**)  Warden Haas upheld the rejection.  (*Id.,* **PageID.209.**)  Burnett appealed again at Step III, but that appeal was also denied.  (*Id.,* **PageID.207.**)

*iii. The Grievances Are Not Duplicates and were Improperly Rejected*

A comparison of Grievance 1416 and Grievance 1269 illustrates differences between them that prevent the Court from finding they are "duplicates" of one another (or, to quote the Policy Directive, that they raised "issues that [were] duplicative of those raised in another grievance.").

Grievance 1416 relates to an incident that occurred on August 25, 2017.  In that Grievance, Burnett grieved unidentified custody staff for entering Unit 5, cell 79 and putting feces in Burnett's mouth.  Burnett filed Grievance 1269 less than one month later—on September 13, 2017—against Anthony Walsh, Dale Holcomb, and others because he was allegedly physically assaulted in Unit 5, cell 79, "by putting feces and other bodily fluids in his mouth." (**ECF No. 31, PageID.127.**)

Although the two Grievances relate to the same general subject matter—an alleged attack on Burnett—because they concern different time periods, different individuals, and different conduct, the Grievances were not "duplicates" of one another.  Thus, the MDOC improperly rejected Grievance 1416 as being a "duplicate" of the Grievance 1269.  *See Johannes,* 2016 WL 1253266, at *6.  Defendants cannot now use this improper rejection to claim that Burnett failed to exhaust his administrative remedies against them.  *See id.*

Defendants' contrary argument could lead to perverse outcomes.  Under Defendants' argument, after an inmate grieved an initial constitutional violation by one prison official,

7

subsequent officials could continue to engage in identical unconstitutional conduct with impunity because the prisoner's subsequent grievances could be rejected as "duplicative" of the initial one, and the prisoner would be unable to exhaust his claims against the subsequent tortfeasors.  Such an application of the PLRA's exhaustion requirements is nonsensical. Moreover, because Defendants' application of the Policy Directive would not permit the inmate to pursue his grievance against the additional tortfeasors, the exhaustion process would be "unavailable" to him vis-à-vis those particular tortfeasors, and thus would not be a basis for disallowing his claim from proceeding in court. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies, and that inmates "must exhaust available remedies, but need not exhaust unavailable ones.").  In sum, Defendants' exhaustion argument fails on the merits.

In their reply brief, Defendants argue that the Court need not reach the merits, however, because Burnett waived the issue by not properly raising it in his response to their motion. (*Id.*, **PageID.301.**)  However, Burnett is a *pro se* plaintiff and the Court must liberally construe his allegations and pleadings.  Moreover, Burnett's position, as evident from his response and his amended complaint filed at approximately the same time, is that he exhausted his administrative remedies with respect to these two Defendants, and that the manner in which his grievances were summarily rejected "prevented [him] from exhausting [his] available administrative remedies."  (**ECF No. 33, PageID.261-62; No. 34.**)  Although Burnett may not have addressed head-on Defendants' argument that the rejected grievances were "duplicates," as explained above, he is correct that the improper rejections rendered the grievance process "unavailable" to him.  Thus, the Court rejects Defendants' argument that Burnett waived the right to oppose Defendants' exhaustion argument.

8

### IV. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the motion for partial summary judgment filed by Defendants Walsh and Holcomb **(ECF No. 31)** be **DENIED**.

Dated: June 15, 2020  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2020.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager