UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BURNETT,

                Plaintiff,

v.

ANTHONY WALSH, *et al.*,

                Defendants.
_____/

Civil Action No. 18-11063

Bernard A. Friedman
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR TEMPORARY RESTRANING ORDER (ECF No. 77)

**Background**

On April 2, 2018, *pro se* plaintiff Michael Burnett ("Burnett"), an incarcerated person, filed a complaint pursuant to 42 U.S.C. § 1983 against several individuals employed at the Macomb Correctional Facility (collectively "Defendants"), where Burnett previously was housed.[1]  (ECF No. 1).  On April 20, 2018, Burnett was granted leave to proceed *in forma pauperis* in this matter.  (ECF No. 6).

On October 7, 2022, the Court issued a Report and Recommendation to dismiss, *sua sponte*, Burnett's complaint pursuant to 28 U.S.C. § 1915(e).  (ECF No. 78).  In that Report and Recommendation, the Court provided a detailed discussion of this case's unusual procedural history (*id.*, PageID.544-46), which it incorporates herein by reference.  In

---

[1] This case has been referred to the undersigned for management, hearing and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 65).

short, the Court explained that, "[u]nderpinning all of Burnett's allegations in the Second Amended Complaint are claims that Defendants 'were using an unfamiliar security device to commit [various] [] assaults'" against him. (*Id.*, PageID.545) (quoting ECF No. 67, PageID.477). Specifically, Burnett "asserts that 'the unknown security device is a radio controlled device that the defendants are using to communicate with me and put human waste in my mouth.'" (ECF No. 78, PageID.545) (quoting ECF No. 67, PageID.480). The Court went on to explain, that, as other courts had found when Burnett had made similar allegations, "[t]hese allegations are fantastic and delusional and rise to the level of the 'irrational or wholly incredible' and need not be credited by the Court." (ECF No. 78, PageID.547-48) (citing *Burnett v. Lane*, No. 1:21-cv-462, 2021 WL 2659631, at *3 (W.D. Mich. June 29, 2021) (Burnett's allegations that the defendants gathered the "ejaculated body waste" of other prisoners and put it in his mouth with "safety systems to lock onto [his] mouth *with prison security technology*" were subject to dismissal as fantastic or delusional) (emphasis added); *Burnett v. Caruso*, No. 2:10-cv-79, 2010 WL 3851782, at *2 (W.D. Mich. Sept. 27, 2010) (allegations that prison officials used a security device to expose Burnett to radioactive urine and stool, which was absorbed through his skin or ingested orally, were fantastic or delusional); *Burnett v. Caruso*, No. 2:08-cv-168, 2009 WL 33470, at *1-3 (W.D. Mich. Jan. 5, 2009) (Burnett's claims that he was exposed to radioactive ionized excrement, semen, and blood was "irrational, wholly incredible, fantastic, and delusional" and subject to dismissal under § 1915(e))). Accordingly, the Court recommended dismissing Burnett's complaint pursuant to 28 U.S.C. § 1915(e). (ECF No. 78, PageID.548).

On October 4, 2022, Burnett filed a motion for temporary restraining order in which he reiterated his contention that an "unidentified radio controlled security device" "is being use[d] to put feces and semen in his mouth, and [to] direct racial slurs at him by prison officials." (ECF No. 77, PageID.530, 538; *see also id.*, PageID.532 ("Defendants were using an unidentified security device to commit the assaults as described herein.")). Burnett asks the Court to order the Michigan State Police "to come into the prison and identify the unidentified security device that have [sic] been used to direct racial slurs at [him] and put feces and semen in his mouth and his mother's mouth." (*Id.*, PageID.531).

**Legal Standards**

Temporary restraining orders ("TRO") and preliminary injunctions "are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, No. 13-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). Whether to grant such relief is a matter within the district court's discretion. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

The same factors are considered in determining whether to grant a request for a TRO or a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Moreover, a TRO is an

3

extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Finally, the Court notes that where, as here, an inmate seeks an order enjoining prison officials, it must proceed with the utmost care and be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984); *see also McKune v. Lile*, 536 U.S. 24, 37 (2002) ("'Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.' To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life." (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (internal citations omitted))). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995) (internal quotations omitted).

**Analysis**

Examining Burnett's motion against these standards, he has failed to show that he is entitled to the immediate injunctive relief he requests.

With respect to the first factor, Burnett has not established a strong likelihood of success on the merits. On the contrary, as explained above, Burnett's complaint is subject to dismissal because his allegations that the defendants are using an "unknown security device [which] is a radio controlled device [] to communicate with [him] and put human

4

waste in [his] mouth" are "fantastic and delusional and rise to the level of the 'irrational or wholly incredible' and need not be credited by the Court." *See supra* at 2, 3.

The Court notes that Burnett now claims that the same "unidentified security device" was used by a John Doe prison officer to put semen in his mother's mouth when she visited him years ago.[2] (ECF No. 77, PageID.531). However, while Burnett claims that allegation is supported by a declaration from his mother, Vera Burnett, he did not provide a signature page to the declaration. (*Id.*, PageID.541). Moreover, any claim by Ms. Burnett that a John Doe prison officer "used an unidentified security device to put semen in [her] mouth" is just as fantastical as Burnett's similar allegation. *See supra* at 2-3.

In light of the foregoing, Burnett failed to demonstrate a substantial likelihood of success on the merits, which greatly mitigates in favor of denying his instant motion. *See Cook v. Chase Home Fin., LLC*, No. 10-15108, 2010 WL 5441929, at *1 (E.D. Mich. Dec. 28, 2010) (concluding that the plaintiff had not demonstrated that she was entitled to a TRO partly because she "fail[ed] to demonstrate a strong or substantial likelihood of success on the merits").

The other factors the Court must consider also weigh in favor of denying Burnett's motion. For the same reasons stated above, Burnett has failed to show he will suffer any actual irreparable injury absent an injunction. Moreover, issuing an order that directs a

---

[2] Burnett contends that the incident with his mother occurred on September 7, 2016, but the unsigned "declaration" of Ms. Burnett indicates the incident occurred on September 7, 2018. (ECF No. 77, PageID.539, 541).

5

Michigan State Police investigation would result in harm to both those involved in the investigation and the public, because the officers would be spending time investigating a fantastical, delusional allegation rather than handling their other important work.

**Conclusion**

For all of the foregoing reasons, **IT IS RECOMMENDED** that Burnett's motion for a temporary restraining order **(ECF No. 77)** be **DENIED**.

Dated: October 11, 2022  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 11, 2022.

                                                s/Michael E. Lang
                                                MICHAEL E. LANG
                                                Case Manager